# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

KENNETH E. THURLOW,

     Petitioner,

  v.

AL RAMIREZ,

     Respondent.

Case No. 1:15-cv-00223-BLW

**MEMORANDUM DECISION AND ORDER**

Pending before the Court is a Petition for Writ of Habeas Corpus filed by Idaho prisoner Kenneth E. Thurlow ("Petitioner" or "Thurlow"), challenging Petitioner's Bonner County conviction of first-degree murder. *Dkt. 1*. The Petition asserts four claims.

The Court previously dismissed Claims 2 and 3 of the Petition as procedurally defaulted. *See Dkt. 25*. Claims 1 and 4 are now fully briefed and ripe for adjudication. Respondent contends that Claims 1 and 4 must be denied on the merits, and Petitioner has not contested Respondent's argument as to Claim 1. *See Dkt. 28, 32*.

The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent. *See Dkt. 11, 23, 27*; Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006). Having carefully reviewed the record in this matter, including the state court record, the Court concludes that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court will enter the following Order denying habeas corpus relief on Claims 1 and 4.

# BACKGROUND

Absent clear and convincing evidence to the contrary, *see* 28 U.S.C. § 2254(e)(1),

the following facts of Petitioner's case, as described by the Idaho Court of Appeals, are

presumed correct:

In August 2005, Thurlow and Christopher Lewers went to a junkyard armed with concealed shotguns and baseball bats. The victim, who was working on his vehicle near the junkyard's garage, was shot in the head with a shotgun at close range. Prior to the shooting, Thurlow approached a caretaker, who was working in the junkyard garage, and asked the caretaker if he had any muriatic acid. The caretaker left the garage and went to his residence on the junkyard property to look for the acid. When he was unsuccessful in locating the acid, the caretaker began to walk back to the garage to notify Thurlow. However, as he was leaving his residence, he noticed Thurlow approaching. Thurlow told the caretaker that the victim was dead and asked for help loading the body into a nearby truck. The caretaker walked back toward the garage and observed the victim's body lying on the ground and Lewers standing nearby.

The caretaker informed Thurlow and Lewers that the truck was inoperable and, fearful for his life, fled the junkyard. After hiding out for several hours, the caretaker returned to the junkyard and called the police. During the caretaker's absence, Thurlow and Lewers stole several items from the victim's truck, left the victim's body behind, and sold the victim's possessions to an acquaintance later that night.

Thurlow was charged with first degree murder, and Lewers was charged with aiding and abetting. Thurlow was represented by one of the conflict public defenders for the county. Prior to trial, Thurlow filed a motion for appointment of co-counsel, which the district court denied. Thurlow went to trial and, at the conclusion of its case-in-chief, the state moved to amend the information to charge Thurlow in the alternative with first degree murder by aiding and abetting in the crime.

*State v. Thurlow*, 269 P.3d 813, 814 (Idaho Ct. App. 2011).

The jury, having been instructed on the first-degree murder charge as well as the lesser-included offenses of second-degree murder and accessory to murder, found Petitioner guilty of first-degree murder. *State's Lodging A-2* at 314–15. The verdict form did not specify whether the jury found that Petitioner acted as a principal or as an aider and abettor; in Idaho, a principal and an aider and abettor are equally culpable. *See State v. Johnson*, 145 Idaho 970, 976, 188 P.3d 912, 918 (2008) ("In Idaho there is no distinction between principals and aiders and abettors, and it is unnecessary the charging document allege any facts other than what is necessary to convict a principal."). Petitioner received a fixed life sentence.[1] *Thurlow*, 269 P.3d at 814.

On appeal, Petitioner raised a Sixth Amendment claim based on the trial court's denial of Petitioner's request to appoint a second-chair attorney. *State's Lodging B-5* at 11–15. The Idaho Court of Appeals disagreed and affirmed Petitioner's conviction and sentence. *Thurlow*, 269 P.3d at 815–16. The Idaho Supreme Court denied review. *State's Lodging B-11*.

Petitioner then filed a post-conviction petition in the state district court. He alleged, among other things, that his trial counsel rendered ineffective assistance during plea negotiations. Petitioner claimed counsel informed him that, if Petitioner went to trial, he would only be convicted of accessory to murder, which carried a maximum sentence of five years. Petitioner asserted that this advice caused him to reject the state's plea offer

---

[1] Lewers, Petitioner's co-defendant, pleaded guilty to first-degree murder and was sentenced to a unified term of life imprisonment with twenty years fixed. State's Lodging E-5 at 34.

of second-degree murder, with a ten-year sentence. *State's Lodging C-1* at 21, 91. The state district court dismissed the petition, but the Idaho Court of Appeals remanded for an evidentiary hearing on the plea-bargaining ineffective assistance claim. *State's Lodging D-5*.

Following that hearing, at which both Petitioner and his trial counsel testified, the state district court concluded that Petitioner's attorney had not performed deficiently and that, even if she had, Petitioner had not shown prejudice. *State's Lodging E-4* at 656–62. The Idaho Court of Appeals affirmed, and the Idaho Supreme Court denied review. *State's Lodging F-4, F-10*.

Petitioner filed the instant Petition while his post-conviction proceedings were pending, and this case was stayed for a time. Once Petitioner's state court proceedings were completed, the instant case was reopened.

Claims 1 and 4 of the Petition remain for adjudication on the merits. In Claim 1, Petitioner asserts that the trial court deprived him of his right to the effective assistance of counsel by denying the request for a second-chair attorney. In Claim 4, Petitioner contends that defense counsel rendered ineffective assistance by advising him to reject a plea offer of second-degree murder.

## HABEAS CORPUS STANDARD OF LAW

A federal court may grant habeas corpus relief when it determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). If the state court has adjudicated a claim on the merits, habeas relief is further limited by § 2254(d), as amended by the Anti-terrorism and

Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal habeas relief

may be granted only where the state court's adjudication of the petitioner's claim:

> (1)   resulted in a decision that was contrary to, or
>        involved an unreasonable application of, clearly
>        established Federal law, as determined by the
>        Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an
>        unreasonable determination of the facts in light
>        of the evidence presented in the State court
>        proceeding.

28 U.S.C. § 2254(d). "Deciding whether a state court's decision involved an

unreasonable application of federal law or was based on an unreasonable determination

of fact requires the federal habeas court to train its attention on the particular reasons—

both legal and factual—why state courts rejected a state prisoner's federal claims and to

give appropriate deference to that decision." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191–92

(2018) (internal quotation marks and citations omitted).

When a party contests the state court's legal conclusions, including application of

the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests:

the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established

federal law "if the state court applies a rule different from the governing law set forth in

[the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court]

[has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694

(2002). Under the second test, to satisfy the "unreasonable application" clause of

§ 2254(d)(1), the petitioner must show that the state court—although identifying "the

correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (emphasis omitted).

Because AEDPA is designed "to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," a federal court cannot grant habeas relief simply because it concludes in its independent judgment that the state court's decision is incorrect or wrong. *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal citation and quotation marks omitted). Rather, the state court's application of federal law must be objectively unreasonable to warrant relief. If there is any possibility that fair-minded jurists could disagree on the correctness of the state court's decision, § 2254(d)(1) precludes relief. *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013).

The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. To be entitled to habeas relief under § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

"Clearly established federal law" means the governing legal principles set forth in the holdings—not the dicta—of the United States Supreme Court, as of the time the state court rendered its decision. *Williams*, 529 U.S. at 412. The habeas statute does not require an identical factual pattern before a legal rule must be applied. To the contrary, state courts must reasonably apply the rules squarely established by the Supreme Court's holdings to the facts of each case. *See White v. Woodall*, 572 U.S. 415, 407–08 (2014).

On the other hand, if a habeas court must *extend* a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state court's decision. *Id.* at 407. A federal habeas court "may not overrule a state court for … holding a view different from its own" when the precedent from the Supreme Court "is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003). Although circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent, *Duhaime v. Ducharme*, 200 F.3d 597, 600–01 (9th Cir. 2000), a federal court may not refine or sharpen a general principle of Supreme Court habeas corpus jurisprudence into a specific legal rule that the Court itself has not announced, *Lopez v. Smith*, 574 U.S. 1, 7 (2014).

If no Supreme Court decision confronted the specific question presented by a state prisoner's federal habeas petition—that is, if the circumstances of a petitioner's case are only *similar* to the Supreme Court's precedents—then the state court's decision cannot be "contrary to" any holding from the Supreme Court. *Woods v. Donald*, 575 U.S. 312, 317 (2015) (per curiam). By the same token, a state court cannot unreasonably apply

established federal law that does not exist. *See, e.g., Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). Therefore, evidence that was not presented to the state court cannot be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the underlying factual determinations of the state court were reasonable. *See Murray v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014) ("After *Pinholster*, a federal habeas court may consider new evidence only on de novo review, subject to the limitations of § 2254(e)(2)."); *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) ("If we determine, considering only the evidence before the state court, that the adjudication of a claim on the merits ... was based on an unreasonable determination of the facts, we evaluate the claim de novo, and we may consider evidence properly presented for the first time in federal court.").

To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable ... in light of the evidence presented in the State court proceeding." A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher

threshold."). State court factual findings are presumed to be correct and are binding on the federal court unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Kirkpatrick v. Chappell*, 926 F.3d 1157, 1170 (9th Cir. 2019) (holding that § 2254(e)(1) "appears to apply to all factual determinations made by state courts").

If a petitioner satisfies § 2254(d)—either by showing that the state court's adjudication of the claim was contrary to, or an unreasonable application of Supreme Court precedent or by establishing that the state court's factual findings were unreasonable—then the federal habeas court must review the petitioner's claim de novo, meaning without deference to the state court's decision. *Hurles*, 752 F.3d at 778. When considering a habeas claim de novo, a district court may, as in the pre-AEDPA era, draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989).

Even under de novo review, however, if the factual findings of the state court are not unreasonable under § 2254(d)(2), the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167–68; *Kirkpatrick*, 926 F.3d at 1170 ("Unlike § 2254(d), § 2254(e)(1)'s application is not limited to claims adjudicated on the merits [by a state court]."). Conversely, if a state court factual determination is unreasonable, the federal court is not limited by § 2254(e)(1) and may consider evidence outside the state court record, except to the extent that § 2254(e)(2) might apply. *Murray v. Schriro*, 745 F.3d at 1000.

Generally, even if a petitioner succeeds in demonstrating a constitutional error in his conviction, he is entitled to federal habeas relief only if the petitioner "can establish that [the error] resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Under the *Brecht* standard, an error is not harmless, and habeas relief must be granted, only if the federal court has "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (internal quotation marks omitted). However, some types of claims "are analyzed under their own harmless error standards, which can render *Brecht* analysis unnecessary." *Jackson v. Brown*, 513 F.3d 1057, 1070 (9th Cir. 2008). Ineffective assistance of counsel claims are included in this category. *Musladin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009) ("[W]here a habeas petition governed by AEDPA alleges ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), we apply *Strickland*'s prejudice standard and do not engage in a separate analysis applying the *Brecht* standard.").

## DISCUSSION

### 1. Petitioner Is Not Entitled to Habeas Relief on Claim 1

Claim 1 asserts a violation of the Sixth Amendment based on the trial court's denial of Petitioner's request for a second-chair attorney.

#### A. *Factual Basis of Claim 1*

Before trial, Petitioner's appointed counsel requested that the trial court appoint a second-chair attorney to assist her. She stated that, as a solo practitioner and the last

contract attorney for the county, she did not have the time or resources necessary "to properly represent [Petitioner] without being ineffective." *State's Lodging A-3* at 42. She noted that there were two prosecutors on the case and that she had to work on other cases in order to pay her living expenses. *Id.* at 48.

The trial court denied the request for appointment of co-counsel:

> I certainly have not seen anything from the presentation of this case thus far that indicates to me that either Mr. Lewers or Mr. Thurlow are not being effectively represented in their cases. I am also mindful that these attorneys are appearing here today, like many of the public defenders that appear in front of the court on a regular basis, and prosecutors that appear on a regular basis, are typically overworked. I think that's very normal and the court is accustomed to that. And it's also the court's understanding that we have a serious case here.
>
> On the other hand, I'm not sure what quantifies this particular case as a case, these cases that are any more serious that any other case that carries a very serious potential penalty….
>
> The court can go on and on where the statutes carry maximum possible penalty of life in prison. If every time we have a case such as that that … would automatically mandate a generation of multiple representation by counsel, I think that would set a precedent that I don't think that the law calls for.

*Id.* at 51–52.

Although Idaho law requires the appointment of more than one defense attorney in capital cases, unless the judge "makes specific findings that two attorneys are not necessary," *see* Idaho Criminal Rule 44.3(b), the trial court noted that no similar requirement applies to noncapital cases. *Id.* at 52. The court also stated that even if

appointing second-chair counsel was "an appropriate and wise thing to do, it would appear to the court it's probably more a responsibility of the county … than it is of this court to simply interfere with the contractual or the other legal obligations that the county has." *Id*. The trial court left open the possibility of appointing a second-chair attorney at some point in the future, but found there was no showing, at that point, that Petitioner was not receiving effective legal representation. *Id*. at 52–54. Finally, the court noted that it had already "taken into account perhaps the unique and serious nature" of Petitioner's case by extending the investigative resources available to the defense. *Id*. at 54.

### B. *Clearly Established Law*

The Sixth Amendment guarantees criminal defendants the right to have the assistance of counsel in their defense. *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963). However, the United States Supreme Court has never held that the Constitution requires the appointment of more than one defense attorney to represent a criminal defendant, nor has that Court delineated the standards by which a request for appointed co-counsel should be considered.

There is no absolute right under the Sixth Amendment to a second-chair attorney. As the Third Circuit has explained:

> The Constitution specifies the *quality* of representation that all criminal defendants, including capital defendants, must receive, namely, "reasonably effective assistance." *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052. The Constitution does not specify the number of lawyers who must be appointed. If a single attorney provides reasonably effective assistance, the Constitution is satisfied, and if a whole team of lawyers fails to provide such assistance, the Constitution is violated. Thus,

there is no constitutional right per se to the appointment of
co-counsel ….

*Riley v. Taylor*, 277 F.3d 261, 306 (3d Cir. 2001). The Sixth Amendment guarantees the

effective assistance of counsel—it does not guarantee a certain number of attorneys.

The Sixth Amendment may, in certain circumstances, require the appointment of a

second-chair defense attorney, but only if that appointment is necessary to guarantee

effective legal assistance to the defendant in a particular case. However, the Supreme

Court has not issued any decision regarding how a court should analyze a request for the

appointment of co-counsel.

### C. The State Court's Rejection of Claim 1 Was Not Unreasonable under AEDPA

The Idaho Court of Appeals noted that the appointment of co-counsel in a

noncapital case was an issue of first impression in Idaho. The court set forth the

governing legal standard as follows:

> *The Sixth Amendment does not require that more than one
> attorney be appointed for an indigent criminal defendant,
> unless the appointment of more than one attorney is
> necessary for the defendant to receive the effective assistance
> of counsel* which is his or her right under that Amendment.
> Even in a capital case there is no blanket constitutional
> requirement of appointment of more than one attorney,
> although such a right may exist under the statutes of a
> particular jurisdiction. *Generally, when an indigent defendant
> has been provided with an attorney at public expense, his or
> her request for additional counsel is committed to the trial
> court's discretion.* Denial of a request for appointment of
> additional counsel is proper when the amount of preparation
> and investigation required to defend the case is not unduly
> burdensome. *When the resources of one appointed counsel
> will not suffice to adequately represent a defendant, the
> appointment of cocounsel is proper.*

*Thurlow*, 269 P.3d at 815 (emphasis added) (quoting 21A Am. Jur. 2d, Criminal Law § 1115 (2008)). The court of appeals surveyed cases from other states regarding the appointment of second-chair counsel and concluded that a trial court should appoint co-counsel "where the record demonstrates that initial counsel [is] not adequately representing the accused." *Thurlow*, 269 P.3d at 815.

Applying this standard to Petitioner's case, the appellate court determined that the trial court appropriately found no evidence that Petitioner's counsel was unable to render effective assistance. *Id.* at 815–16.

Given that there is no clearly established Supreme Court precedent requiring the appointment of a second-chair defense attorney in a criminal case—or explaining how a request for such an attorney should be analyzed—the Idaho Court of Appeals' rejection of Claim 1 cannot be contrary to, or an unreasonable application of, such precedent. *See Donald*, 575 U.S. at 317; *Van Patten*, 552 U.S. at 126; *Musladin*, 549 U.S. at 77. Petitioner does not dispute that clearly established law fails to provide an avenue for relief on Claim 1 under § 2254(d)(1), nor does Petitioner contend that the Idaho Court of Appeals' rejection of Claim 1 was based on an unreasonable determination of the facts under § 2254(d)(2). Thus, the Court will deny Claim 1.

**2.      Petitioner Is Not Entitled to Habeas Relief on Claim 4**

In Claim 4, Petitioner asserts that his trial counsel rendered ineffective assistance during plea negotiations—causing him to reject a plea offer of second-degree murder—by informing him that, if he went to trial, he would be convicted only of being an accessory to the murder.

### A.    Factual Basis of Claim 4

Before trial, in May 2006, the state conditionally offered Petitioner a plea to second-degree murder, an offer that was open for a short period of time. Trial counsel discussed the offer with Petitioner.

At the post-conviction evidentiary hearing, Petitioner testified that counsel described the offer as carrying a fixed ten-year sentence. Petitioner testified that he did not know that the offer also carried an indeterminate tail and said counsel did not show him a copy of the offer. *State's Lodging E-5* at 8. Both Petitioner and trial counsel testified that the plea offer was conditioned on Lewers also accepting the offer and that counsel told Petitioner she did not believe Lewers would do so. *Id*. at 10, 39, 54.

According to Petitioner, counsel told him that if he went to trial, he "would be found guilty of accessory to murder" with a maximum sentence of five years in prison. *Id*. at 9. Petitioner acknowledged that counsel informed him that he could also be convicted of felony murder, but said counsel told him that he "would probably be convicted of the accessory" and "would be better off going to trial." *Id*. at 9, 16, 28. Petitioner testified that, on the advice of trial counsel, he rejected the offer. On cross-examination, however, Petitioner stated once again, "[Counsel] had warned me that I could be convicted of felony murder, yes, sir." *Id*. at 28.

Trial counsel's testimony during post-conviction proceedings differed from Petitioner's in several respects. Counsel testified she told Petitioner that the offer carried a unified life sentence with ten years fixed. *Id*. at 39. Also, though counsel did not specifically remember handing Petitioner a copy of the offer, she testified that it was her

practice to do so, and that it "would have been totally unlike" her not to have provided

Petitioner a copy so they could go through the offer paragraph by paragraph. *Id*. at 43, 55.

Contrary to Petitioner's testimony, trial counsel testified that she encouraged

Petitioner to take the offer to plead to second-degree murder:

> I remember having to explain to him that even if they had gone over there to threaten [the victim], and they had the weapons and he got killed, that that would still at least be felony murder and that would be a minimum of 10 years. And that it didn't matter who did the shooting, because they're doing it together.
>
> And then I used the bank robber explanation that the get-away driver is just as guilty of the shooting inside the bank, even though they're just sitting in the car, you know, in terms of a legal analysis.
>
> And I specifically remember talking to him and telling him that this was a decent offer and we'd try to take it.
>
> …
>
> … I'm certain that I went over all the terms with him. And I remember advising him to take the second-degree deal.
>
> In my mind, it didn't matter if Lewers wasn't going to take it, I try to convince the prosecution otherwise, that's my job. [Thurlow] was insistent that he go to trial—insistent.

*Id*. at 47–48, 55–56. Counsel also stated that an offer to plead to accessory was not on the

table and that she did not at that time tell Petitioner she thought he would be convicted of

accessory. *Id*. at 47, 56. Rather, counsel testified she told Petitioner that she believed he

would be convicted of felony murder at the least. *Id*. at 56.

Several months later and only a week before trial, trial counsel sent Petitioner a printed copy of Idaho Code § 18-205, which governs the crime of being an accessory to a felony. The printout of the statute included a handwritten note from Petitioner's counsel:

> Kenny –
>
> This is the crime I believe you would/will be found guilty of if we go to trial. Maximum penalty is 5 yrs. <u>State v. Barnes</u> is attached. It is a Bonner Co. case + explains how little a person has to do to become an accessory after the fact. Thought you might be interested.

*State's Lodging E-6* at 1 (Dkt. 27-1 at 2).

Trial counsel testified that, in writing the note to Petitioner, she did not intend to communicate that she believed Petitioner would be convicted of accessory at the *most*. Instead, she testified that she was responding to a specific question Petitioner had asked her. *State's Lodging E-5* at 52. Counsel had been preparing jury instructions about lesser included offenses and was working on the accessory instruction when she sent the note. According to counsel, Petitioner had asked what counsel thought was the *least* serious crime of which he would be convicted, and counsel intended the note to answer that particular question. *Id*. at 52, 57.

When asked whether she told Petitioner, at any time, that "he shouldn't worry about being convicted of murder" because he would only be convicted of accessory, counsel responded, "Never." *Id*. at 53. By the time counsel sent Petitioner the note, the second-degree plea offer had been off the table for three months. *Id*. at 51–52.

## B.    Clearly Established Law

The Sixth Amendment right to the assistance of counsel includes the right to effective assistance of counsel. A criminal defendant is not entitled to the best representation possible. Rather, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

A petitioner asserting ineffective assistance of counsel ("IAC") must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors prejudiced the defendant by "depriv[ing] the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. A petitioner must establish both deficient performance and prejudice to prove an IAC claim. *Id.* at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one prong is not satisfied and would compel denial of the IAC claim. *Id.*

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the reasonableness of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance

requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Although a criminal defendant has "no right to be offered a plea, nor a federal right that the judge accept it," the right to the effective assistance of counsel extends to the plea negotiation process." *Missouri v. Frye*, 566 U.S. 134, 148 (2012) (citation omitted). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution" to the defendant, and to advise the defendant to consider the offers. *Id.*

"[S]trict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage," for two reasons:

First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy, and it presents questions further removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there

was manifest deficiency in light of information then available to counsel. AEDPA compounds the imperative of judicial caution.

Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. *Strickland* allows a defendant "to escape rules of waiver and forfeiture." Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland.* The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

*Premo v. Moore*, 562 U.S. 115, 125 (2011) (internal citations and quotation marks omitted).

If a petitioner shows that counsel's performance was deficient, the next step is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. As the *Strickland* Court instructed:

In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated,

> trivial effect. Moreover, a verdict or conclusion only weakly
> supported by the record is more likely to have been affected
> by errors than one with overwhelming record support. Taking
> the unaffected findings as a given, and taking due account of
> the effect of the errors on the remaining findings, a court
> making the prejudice inquiry must ask if the defendant has
> met the burden of showing that the decision reached would
> reasonably likely have been different absent the errors.

*Id.* at 695-96. To constitute *Strickland* prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. 86 at 112.

To establish prejudice in the plea context, a petitioner "must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). Specifically, "where a plea offer has lapsed or been rejected because of counsel's deficient performance," the prejudice prong of *Strickland* requires the petitioner to demonstrate a reasonable probability that (1) the petitioner "would have accepted the earlier plea offer had they been afforded effective assistance of counsel," (2) the plea offer would not have been withdrawn or canceled by the prosecution, (3) the trial judge would have accepted the plea, and (4) the "end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Frye*, 566 U.S. at 147.

The foregoing standard, giving deference to counsel's decision-making, is the de novo standard of review. Another layer of deference—to the state court decision—is required under AEDPA. In giving guidance to district courts reviewing *Strickland* claims on habeas corpus review, the United States Supreme Court has explained:

> The pivotal question is whether the state court's application
> of the *Strickland* standard was unreasonable. This is different

> from asking whether defense counsel's performance fell
> below *Strickland*'s standard. Were that the inquiry, the
> analysis would be no different than if, for example, this Court
> were adjudicating a *Strickland* claim on direct review of a
> criminal conviction in a United States district court. Under
> AEDPA, though, it is a necessary premise that the two
> questions are different. For purposes of § 2254(d)(1), "an
> unreasonable application of federal law is different from an
> incorrect application of federal law." *Williams*, *supra*, at 410,
> 120 S. Ct. 1495. A state court must be granted a deference
> and latitude that are not in operation when the case involves
> review under the *Strickland* standard itself.

*Richter*, 562 U.S. at 101. That is, when evaluating an IAC claim under § 2254(d), this

Court's review of that claim must be "doubly deferential." *Pinholster*, 563 U.S. at 190

(internal quotation marks omitted).

### C.    The State Court's Rejection of Claim 4 Was Not Unreasonable under AEDPA

In considering Claim 4, the Idaho Court of Appeals appropriately cited *Strickland*

and *Lafler* as the legal principles governing Petitioner's IAC claim. *State's Lodging F-4*

at 3. The state court held that Petitioner's trial counsel adequately and accurately

informed him of the plea offer and, therefore, did not perform deficiently:

> Thurlow did not present a viable claim of deficient
> performance as required by the first prong of the *Strickland*
> test. Thurlow asserts that it was objectively unreasonable for
> his trial counsel to advise him to reject the plea offer and the
> district court erred in finding Thurlow's testimony at the
> evidentiary hearing did not establish deficient performance.
> To support his position, Thurlow notes that during the
> evidentiary hearing he testified that in late May or early June
> his trial attorney told Thurlow that she thought if they went to
> court that Thurlow would be found guilty of accessory to
> murder and that carried a penalty of five years. *However,*
> *when asked if they had discussed other possibilities of what*
> *may happen, Thurlow responded, "Well, I asked her about*

> *that, and she told me that it could possibly be felony murder."*
> On cross-examination Thurlow reiterated, "She had warned
> me that I could be convicted of felony murder, yes, sir."

*Id*. at 4 (emphasis added).

The court did not find the handwritten note from counsel to be particularly

relevant to Petitioner's plea-offer discussion with counsel because it was sent three

months after the offer had expired. "Additionally, [Petitioner's] trial counsel explained

that [the note] was in regard to a discussion they had about which other lesser included

jury instructions she would be requesting." *Id*. Thus, Petitioner had "failed to show his

trial counsel was ineffective during the plea negotiation stage by providing inaccurate

information." *Id*. at 4–5.

The Idaho Court of Appeals also held that Petitioner had not establish prejudice

from counsel's advice regarding the plea offer:

> Regarding the specifics of the plea offer, *Thurlow testified his
> trial counsel explained it was conditioned on both Thurlow
> and Lewers accepting it, that counsel expressed her belief
> that Lewers would not accept the offer, and that it was offered
> for a short period of time*. Regarding the requirement[] [that]
> Lewers needed to accept its terms as well, Thurlow was asked
> at the evidentiary hearing, "So basically the offer was there
> but it wasn't an offer because Chris Lewers wasn't going to
> accept it?" Thurlow answered, "That's kind of what I
> understood, yes." *There was no showing that the State's plea
> offer would ultimately have been available to Thurlow even if
> he would have tried to accept it.*
>
> …
>
> … Thurlow cannot demonstrate that there is a
> reasonable probability that, but for counsel's errors, he would
> not have pled guilty and would have insisted on going to trial.

*Id.* at 5 (emphasis added).

The double deference that applies when reviewing IAC claims in habeas proceedings leaves no room for this Court to second-guess the decision of the Idaho Court of Appeals. *Pinholster*, 131 S. Ct. at 1403; *Strickland*, 466 U.S. at 689. Petitioner knew, at the time the offer was extended, that he could be convicted of felony murder at trial and that the offer was conditioned on Lewers also accepting it. The offer had long since lapsed when counsel sent Petitioner the note regarding a potential accessory conviction. Thus, Petitioner has not shown either that his counsel performed deficiently or that he was prejudiced by any allegedly deficient advice, and the Idaho appellate court's rejection of Claim 4 was not unreasonable under AEDPA.

## CONCLUSION

The Idaho Court of Appeals reasonably rejected Claims 1 and 4. Therefore, Petitioner is not entitled to habeas relief on these claims under 28 U.S.C. § 2254(d).

## ORDER

**IT IS ORDERED:**

1.  Claims 1 and 4 of the Petition for Writ of Habeas Corpus (Dkt. 1) are DENIED. Because Claims 2 and 3 have already been dismissed, this entire action is DISMISSED with prejudice.

2.  The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner wishes to appeal, he must file a timely notice of appeal with the

Clerk of Court. Petitioner may seek a certificate of appealability from the

Ninth Circuit by filing a request in that court.


DATED: April 7, 2020

B. Lynn Winmill
U.S. District Court Judge